**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**CANDY NEWHART,**

    **Plaintiff,**

v.                                          Case No. 8:04-cv-2427-T-TBM

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

## O R D E R

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was forty-two years of age at the time of her administrative hearing. She stands 5', 2" tall and weighed 155 pounds, up from a usual 115 pounds. Plaintiff has a GED. Her past relevant work was as a bartender and waitress. Plaintiff applied for disability benefits and Supplemental Security Income payments in May 2000, alleging disability as of April 17, 1998, by reason of pain in her neck, shoulders, arms, back, legs, and knees. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). In essence, Plaintiff claimed that she could no longer work at any job as

a result of injuries sustained in an automobile accident. According to Plaintiff, she experiences debilitating pain from her head to her toes as a result of the accident. She has headaches at least once a day that last for a couple of hours and make her dizzy. Plaintiff described this pain as a level eight on a scale of one to ten. She has to lie down and take aspirin to get relief. As for her neck pain, Plaintiff described it as a constant and severe pain that radiates into her shoulders, arms, hands, and fingers. The pain lasts for a couple of hours at a time and only subsides when she lies down. She has pain episodes such as this two or three times a day, and she described it as a level eight on a scale of one to ten, with ten representing the greatest pain. Plaintiff also claimed lower back pain that radiates into her legs and toes. By her account, her left leg hurts the most, although she also has pain in her right hip and both ankles. Again, this pain occurs everyday, and she describes it at a level ten. Her only relief is to lie down. Plaintiff described her overall pain as a level nine on a scale of one to ten. Plaintiff testified that the only medication that ever worked was morphine; other medications made her sick to her stomach and dizzy.

      Plaintiff further described hearing difficulty in her right ear and said that she suffers earaches occurring once a week and lasting for a couple of days. She also suffers from depression, which makes her cry three or four times a week, causes her not to want to be around other people, and results in her lying in bed frequently. On bad days, she cannot get out of bed. She estimated her depression occurs two to three times a week, causing her difficulty focusing, concentrating, and with her memory. Plaintiff also described difficulty with sleeping. By her account, the pain in her legs causes her to wake up two or three times

2

each night. She uses pillows and blankets to elevate her legs and takes aspirin for relief. She claimed that she must take naps lasting up to two hours in the morning and afternoon.

Concerning her daily routine and personal care, Plaintiff indicated that she spends most of her day lying down or reclining and watching television. Her pain has altered the way she takes care of herself, including how she showers, combs her hair, dresses, and cooks. Essentially, she indicated that because of difficulty standing, she can only perform these activities for a short duration. Plaintiff claimed she can stand for maybe ten to fifteen minutes, although she indicates that her legs begin hurting almost immediately after she stands up. She claimed she can walk for only a short distance and maybe one to two minutes maximum. She can sit for about twenty minutes before her back hurts. According to Plaintiff, lifting even a newspaper is painful. She also claimed that her fingers go numb, and, as a result, she loses her grip on items two to three times a week. She does not stoop, kneel, crawl, crouch, or climb. Plaintiff drives two to three times a week for a maximum of fifteen minutes or so. While driving, her arms hurt, and she must switch from one hand to the other on the wheel and her left leg hurts. She indicated that her sister does all of her household chores and assists her with her shopping.

Both at the outset of the hearing and at the conclusion of the hearing, Plaintiff's counsel requested that the ALJ obtain a consultative orthopedic evaluation. It appears that Plaintiff failed to appear at such an evaluation ordered by the court during the initial administrative proceedings. According to the Plaintiff, the lack of medical records in her case is a product of her lack of money and inability to qualify for public assistance. See Plaintiff's testimony (R. 220-250).

3

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of January 28, 2003, the ALJ determined that while Plaintiff has severe impairments related to disorders of the muscle, ligament, and fascia, she nonetheless had the residual functional capacity to perform a full range of sedentary work. Upon this finding and by application of the Medical-Vocational Guidelines, the ALJ determined that Plaintiff was not disabled. (R. 20-21). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided the Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. See 20 C.F.R. §§ 404.1501, et seq. These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity.

In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." Id. at Part 404, Subpart P, Appendix 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. Id. at § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. Id. at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises several general claims for relief. She challenges the ALJ's findings with respect to: (1) treating source evidence; (2) credibility/combination of impairments; (3) vocational expert testimony; and (4) medication side effects.

By her first claim, Plaintiff argues that the ALJ erred in disregarding the physical limitations identified by Dr. Hellena Scott-Okafor, a consultative examiner, and she cites to Eleventh Circuit case law pertaining to treating physicians in support thereof. Plaintiff argues further, by way of her third claim, that the ALJ erred by failing to obtain VE testimony in light of this consulting doctor's limitations. (Doc. 11 at 3-4, 6-7).

The Commissioner responds that these arguments essentially boil down to the fact that the ALJ's residual functional capacity (hereinafter "RFC") determination was not identical to the limitations identified by Dr. Scott-Okafor.  The Commissioner asserts that because it is the ALJ's responsibility to determine a claimant's RFC, the issue here is whether the ALJ's RFC finding is supported by substantial evidence.  In the Commissioner's view, the ALJ's finding that Plaintiff can perform sedentary exertional work (without additional limitations) is supported by the record and is in fact more restrictive from an exertional standpoint than that indicated by Dr. Scott-Okafor.  As for the ALJ's reliance on the grids, the Commissioner asserts that Plaintiff's argument presupposes that the ALJ should have adopted in toto Dr. Scott-Okafor's findings, including the additional postural and balance limitations.  Thus, the Commissioner argues that the ALJ was not required to obtain the services of a VE because, as indicated above, his RFC assessment for a full range of sedentary work is supported by the record.  (Doc. 12 at 6-8, 10).

Here, Dr. Scott-Okafor examined Plaintiff in October 2002 upon request by the Social Security Administration (hereinafter "SSA").  Under the section of her report entitled "Recommendations," the doctor wrote:

> Activity status:  Medium to light duty,[1] with a straight cane
> for gait stability.  She [Plaintiff] will need periodic position

---

[1]The Social Security Regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [a] job is this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).  Medium work is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  Id. at §§ 404.1567(c), 416.967(c).  There is no indication that Dr. Scott-Okafor was referring to these definitions when she opined that Plaintiff could perform "medium to light duty" [work].

7

> changes, and limited climbing, balancing, kneeling,
> crouching, crawling, and stooping secondary to postural
> abnormalities, including decreased balance. I would also
> recommend limiting overhead reaching. She has no
> limitation in cognitive and communicative areas.

(R. 205). Dr. Scott-Okafor also completed a form given to her by the SSA captioned, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." She opined therein that Plaintiff (1) could lift or carry twenty pounds occasionally and ten pounds or less frequently, (2) required a hand-held assistive device (a straight cane) for walking and/or standing, (3) must periodically alternate sitting and standing to relieve pain or discomfort, (4) could never climb, balance, kneel, crouch, crawl, or stoop, (5) could reach, including overhead, only occasionally, and (6) should not be exposed to vibration, height, and other potential hazards. (R. 207-10).

The ALJ discussed Dr. Scott-Okafor's evaluation of Plaintiff when summarizing the medical evidence and he noted verbatim the "activity status" recommendations set forth in her report. See (R. 17). The ALJ mentioned the recommended limitations, except for the periodic position change, when assessing Plaintiff's credibility. See id. at 18. He also cited to the doctor's opinion in determining that Plaintiff was able to perform sedentary exertional work,[2] explaining that,

> In reaching this conclusion, the undersigned has given strong
> consideration to Dr. Scott-Okafor's opinion that the claimant
> is capable of performing a restricted range of medium to

---

[2]Sedentary work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

8

>light duty. An individual capable of performing medium to
>light duty is capable of performing sedentary duty.

Id. at 19. The ALJ explained further that, while he has considered the opinions of the state agency medical consultants who provided RFC assessments at the initial and reconsideration levels, evidence submitted after their review of the record revealed that Plaintiff was more limited than originally thought.[3] Finally, after finding that "the evidence supports a finding that the claimant can perform the demands of the *full range* of sedentary work," the ALJ concluded that Medical-Vocational Rule 201.28 directed a finding of not disabled.[4] (R. 20).

Upon consideration, the court concludes that remand is required on these claims. First, while the ALJ clearly considered Dr. Scott-Okafor's opinion as set forth in her report, he did not consider or even mention the limitations identified in the "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form the doctor completed at the request of the SSA.[5] While some of the restrictions noted in that form are similar to those the doctor noted in her report, they appear to be more particular and more restrictive. For example, while Dr. Scott-Okafor recommended *limited* postural activities in her report, she opined in the form that Plaintiff must *never* climb, balance, kneel, crouch, crawl, or stoop. Likewise, she stated in her report that Plaintiff required *periodic position changes*, yet in the

---

[3]In October 2000, Dr. Nicholas H. Bancks opined that Plaintiff could perform medium exertional work with certain postural and environmental limitations. See (R. 121-28). In February 2001, Dr. Eric C. Puestow opined that Plaintiff could perform light exertional work with certain postural limitations. See (R. 129-36).

[4]Before rendering this conclusion, the ALJ acknowledged that the Medical-Vocational Guidelines (grids) may be used to direct an unfavorable decision only if the claimant has the exertional RFC to perform substantially all of the seven primary strength demands required by work at the given level of exertion and there are no nonexertional limitations. See (R. 20).

[5]Interestingly, neither party mentioned this omission.

9

form she clarified that this meant *the ability to alternate between sitting and standing at will*. The doctor also included in the form specific lifting and carrying restrictions and added certain environmental restrictions. Compare (R. 205) with (R. 207-10). I find the ALJ's failure to consider this was error. See Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986); see also Lucus v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

Next, to the extent that the ALJ's decision can be read as discounting the postural and/or nonexertional limitations identified by Dr. Scott-Okafor identified in her report (and this is the position the Commissioner takes), the court finds that the ALJ erred by failing to explain why he did not credit these limitations. Although Plaintiff incorrectly relied upon case law pertaining to treating physicians in support of this claim,[6] the ALJ was required nonetheless to state the reasons for rejecting the restrictions provided by Dr. Scott-Okafor and his failure to do so was error. See See Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). The ALJ's error is heightened by the fact that no treating physician provided an opinion as to Plaintiff's functional capacity, and Dr. Scott-Okafor was the only examining physician that did. Additionally, it is worth pointing out that each physician that rendered an opinion on Plaintiff's functional capacity, namely, Dr. Scott-Okafor and the two state agency consultants, indicated that Plaintiff would in fact have postural limitations. Thus, any finding to the contrary appears unsupported. Although the Commissioner argues that the postural and/or nonexertional limitations identified by Dr. Scott-Okafor were "at odds with the record as a

---

[6]As previously indicated, Dr. Scott-Okafor was a one-time examining physician not a treating physician. Therefore, the rules pertaining to such are inapplicable.

10

whole," that determination is to be made in the first instance by the ALJ.  Further, while the Commissioner is correct that a claimant's RFC is a determination on an issue reserved to the ALJ and that an ALJ is not required to adopt an opinion on such, see 20 C.F.R. §§ 404.1527(e), 416.927(e); see also SSR 96-5p, 1996 WL 374183 (S.S.A.), that rule does not absolve an ALJ from explaining his reasons for discounting a doctor's opinion as to a claimant's RFC or ability to perform work-related activities.  See SSR 96-8p, 1996 WL 374184, at * 7 (S.S.A.) (providing that, where an adjudicator's RFC assessment conflicts with an opinion from a medical source, he must explain why the opinion was not adopted); SSR 96-5p, 1996 WL 374183, at * 5 (S.S.A.) (stating that adjudicators must weigh medical source statements under the rules set out in 20 CFR §§ 404.1527 and 416.927 and provide explanations for accepting or rejecting such opinion).[7]

     Lastly, even if the ALJ's decision is read as adopting and crediting the postural limitations of the consulting doctor, the ALJ erred thereafter by relying exclusively on the grids and not obtaining VE testimony.  The inquiry here involves the recurring issue of whether the ALJ may rely exclusively on the grids for decision or whether a vocational expert is required.  As noted recently by the Eleventh Circuit, "[t]he general rule is that after determining the claimant's [residual functional capacity] and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform."  Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004).  It is well established, however, that it is *inappropriate* for the ALJ to

---

[7]In any event, it appears that the opinion at issue here is a medical source statement not a residual functional capacity assessment.  See SSR 96-5p, 1996 WL 374183, * 4-5 (S.S.A.) (explaining the difference between medical source statements and residual functional capacity assessments).

11

rely exclusively on the grids if the claimant is unable to perform a full range or unlimited types of work given the claimant's exertional limitations and/or if the claimant has non-exertional impairments that significantly limit the claimant's ability to perform basic work skills.  Id.; Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989); Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985).  The decision in Foote offers further guidance on this matter:

> Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. . . . The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy.  Although this burden can sometimes be met through straightforward application of the Medical-Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions.  For example, the claimant must suffer primarily from an exertional impairment, without significant non-exertional factors . . .  Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). . . . Pain is a nonexertional impairment. . . . Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities. . . . If the grids are inapplicable, the Secretary must seek expert vocational testimony.

Id. at 1559 (citations omitted).

Thus, as indicated above, nonexertional limitations cause the grids to be inapplicable only when they are severe enough to prevent a wide range of gainful employment at a given exertional level.  Id.; see also Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  Where an ALJ makes a specific finding that a claimant's nonexertional limitations do not preclude a wide range of employment at the given exertional level, that finding is reviewed only to

determine whether it is supported by substantial evidence. <u>Sryock</u>, 764 F.2d at 836. To this end, the Eleventh Circuit has held that, "[a]n ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert." <u>Marbury</u>, 957 F.2d at 839 (citing <u>Allen</u>, 880 F.2d at 1202).[8]

Here, the ALJ determined at step four of the sequential evaluation that Plaintiff's disorder of the muscle, ligament or facia limited her to sedentary exertional work and that she was precluded from performing her past relevant work. (R. 19). The ALJ then concluded at step five that "the evidence supports a finding that the claimant can perform the demands of the full range of sedentary work," and he applied Medical-Vocational Rule 201.28 to find Plaintiff not disabled. (R. 20). Thus, while the ALJ found implicitly that Plaintiff's [nonexertional] limitations did not significantly limit her basics work skills in accordance with the requirement set forth in <u>Sryock</u>, i.e., they did not significantly erode the occupational base of sedentary exertional jobs, his finding is not supported by substantial evidence in the

---

[8]In <u>Marbury</u>, the ALJ found certain nonexertional impairments including seizure disorder, peptic ulcer disease and an affective disorder; however, he determined the Plaintiff could do a full range of light work and no vocational expert was necessary. In rejecting this conclusion and the ALJ's reliance on the grids, the court stated, "it is only when the claimant can clearly do *unlimited* types of light work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." <u>Id.</u> 957 F.2d at 839 (citing <u>Allen</u>, 880 F.2d at 1202, and quoting <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. Unit A Mar. 1981) (emphasis in original)). The court concluded that upon the ALJ's findings that Plaintiff suffered nonexertional impairments, "it is evident that claimant was not able to do *unlimited* types of light work, because he was precluded from work around unprotected heights and dangerous moving machinery." <u>Marbury</u>, 957 F.2d at 839 (emphasis in original). Accordingly, expert testimony was required to determine whether the claimant's limitations were severe enough to preclude him from performing a wide range of light work. <u>Id.</u>, <u>see</u> <u>also</u> <u>Phillips</u>, 357 F.3d at 1242-44.

absence of vocational expert testimony addressing such.[9]  See Marbury, 957 F.2d at 839,

Allen, 880 F.2d at 1202.  Under these circumstances, the ALJ was required to obtain

vocational expert testimony before concluding that Plaintiff's postural and/or nonexertional

limitations did not significantly erode the sedentary exertional job base.

Because remand is warranted on the above ground, the court declines to address

Plaintiff's other assertions of error.[10]  See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th

Cir. 1986) (stating that where remand is required, it may be unnecessary to review other

issues raised).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is not supported by substantial evidence or is not in

---

[9]A number of other decisions in this circuit have also determined the need to call a vocational expert in lieu of exclusive reliance on the grids.  See Welch v. Bowen, 854 F.2d 436, 439 (11th Cir. 1988) (limitation on climbing, balancing, working at heights or around dangerous machinery); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987) (postural and manipulative limitations); Gibson v. Heckler, 762 F.2d 1516, 1521 (11th Cir. 1985) (limitation on sitting and standing); McRoberts v. Bowen, 841 F.2d 1077, 1081 (11th Cir. 1988) (limitation on sitting and standing); Swindle v. Sullivan, 914 F.2d 222 (11th Cir. 1990) (pain and dizziness); Falcon v. Heckler, 732 F.2d 827 (11th Cir. 1984) (depression and low back pain); Patterson v. Bowen, 799 F.2d 1455, 1459 (11th Cir. 1986) (limited grip strength and dexterity).

[10]The ALJ, however, is reminded that a lack of treatment is not necessarily a sufficient reason to discredit a claimant's subjective complaints.  See SSR 96-7p, 1996 WL 374186, at * 7 (S.S.A.) (providing that an ALJ may not draw any inferences about a claimant's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that Plaintiff may provide, or other information in the case record, that may explain the infrequent or irregular medical visits or failure to seek medical treatment).  This is particularly true, where, as here, a claimant has alleged an inability to afford medical treatment.

accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 19th day of January 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record